UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                                    Case Number 90-80492

v.                                                      Honorable David M. Lawson

PATRICK SIMS,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Patrick Sims has filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Sims has served over three-quarters of a 481-month prison sentence for drug and firearms offenses. He argues that a sentence reduction is justified by his medical conditions (obesity, type 2 diabetes, and chronic kidney disease) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. Because Sims has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

On May 31, 1990, defendant Patrick Sims was convicted after a jury trial on one count of conspiracy to possess with intent to distribute cocaine, and one count of using or carrying a firearm during and in relation to a drug trafficking crime. Initially he was sentenced to 151 months for the drug conspiracy and 360 months on the gun charge. However, the sentence on the drug count was reduced to 121 months after Amendment 782 of the Sentencing Guidelines authorized a lower penalty range for the cocaine offense. The defendant presently has served 368 months of the

revised cumulative 481-month prison term. He presently is confined by the Bureau of Prisons at FMC Rochester, in Rochester, Minnesota, which is an administrative security federal medical center housing around 600 inmates. Sims is 55 years old. Public records of the BOP indicate that he is scheduled to be released from prison on October 30, 2024.

The most recent data disclosed by the BOP indicates that there are four active coronavirus case among inmates and none among staff at the Rochester facility, although 375 inmates and 57 staff previously were diagnosed and now have recovered. Reports indicate that no inmates have died. *See* https://www.bop.gov/coronavirus/. The BOP also recently began reporting data on the number of COVID-19 vaccinations that it has administered to staff and inmates. At Rochester, the reports indicate that 265 staff and 38 inmates fully have been vaccinated.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has

'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Sims relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for

reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

The government affirmatively asserts that the defendant has established that he faces an "extraordinary and compelling" medical risk due to his acknowledged diagnoses of type 2 diabetes and his obesity (body mass index (BMI) of 34.6). The government also represents in its motion that it learned through consultation with defendant's appointed counsel that the defendant also has chronic kidney disease, although that condition was not discussed in the defendant's opening motion brief. However, the government also points out that medical records reveal that the defendant recently was diagnosed with COVID-19 and since has recovered, with "relatively mild symptoms."

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And

the defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control &

Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize that obesity, type 2 diabetes, and chronic kidney disease all are factors that seriously elevate the risk of complications for anyone who is infected with the COVID-19 disease. *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 24, 2021).

However, notwithstanding the government's concession on this point, the recognition that an inmate has one or more serious and certain medical risk factors does not end the analysis of whether extraordinary and compelling circumstances warrant his immediate release. That is because another obviously and highly pertinent consideration is the probability that the defendant is likely to contract an infection again from the coronavirus in his present situation, which in this case appears to be remote. Recent reports indicate that the probability of infection at Rochester, although once quite high, now is very low, with only four active cases among inmates. Further, even as the incidence of infection at Rochester dramatically has declined, the probability of a future severe outbreak also has been diminished by the BOP's rapid deployment of newly available vaccines, which so far have been administered fully to 265 staff and 38 inmates in Rochester. The likelihood of a severe outbreak only further will diminish as the vaccination program proceeds. The available medical records do not indicate that Sims has been vaccinated (and it is unclear if he will be, since he already contracted the virus). However, federal courts have acknowledged that the deployment of the vaccine by the BOP significantly mitigates the assessment of risk.

*United States v. Grummer*, No. 08-4402, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases).

Moreover, the fact that the defendant recently was infected with the coronavirus and recovered without severe complications further mitigates the concern that he could be at risk of severe consequences from a prospective re-infection. The defendant's medical records indicate that he tested positive for COVID-19 in December 2020, but when examined while ill he reported only relatively mild symptoms of nausea and some vomiting. *E.g.*, Medical Notes dated Dec. 30, 2020, ECF No. 463, PageID.576 ("55 y/o male with current COVID infection. He denies cough, congestion, headache, shortness of breath. He has some nausea and just vomited up dinner 30 minutes ago. He says he's OK, though."). He evidently fully recovered within several weeks after he tested positive. The records do not indicate that the defendant needed any extraordinary therapy during his convalescence. On similar facts, this Court and others have found that extraordinary circumstances were not established by inmates who had one or more acknowledged risk factors, but who had contracted the disease and recovered without serious consequences. *E.g.*, *United States v. Littles*, No. 15-20317, 2020 WL 4346962, at *3 (E.D. Mich. July 29, 2020) ("[A]s tortuous as Littles's medical course has been, it does not appear that he presently is at great risk of peril from the coronavirus. Certainly, he has multiple risk factors for complications. But he already had contracted the virus and has recovered.") (denying motion for compassionate release by inmate with obesity and immune system compromise, who also recently had undergone chemotherapy for cancer treatment, but who had contracted and recovered from the coronavirus without complications). The circumstances here contrast with the rare instances where inmates have been released after contracting and recovering from the coronavirus, because, although they had survived, they had suffered grave symptoms and required extensive, exotic therapies, which

aggravated rather than mitigated the assessment of their prospective risk in case of a reinfection. *C.f. United States v. Brownlee*, No. 14-20562, 2020 WL 6118549, at *6 (E.D. Mich. Oct. 16, 2020) ("Because she has at least two recognized serious medical risk factors, has no guarantee of any prospective immunity, and was hospitalized with grave symptoms and required extensive treatment to counter her previous infection, and because there continue to be active cases at the facility where she is confined, the defendant has established that she faces an extraordinary and compelling medical risk due to possible reinfection.").

Even though the defendant has several acknowledged risk factors, considering the present scarcity of active cases among inmates at his facility, as well as the ongoing vaccination program at Rochester, and the fact that the defendant recently contracted the coronavirus and recovered without serious complications, the defendant has not sufficiently established that he presently faces an extraordinary and compelling medical risk that warrants his release.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons to reduce his sentence, the Court need not discuss the relevant section 3553(a) factors.

III.

Sims has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 458) is **DENIED**.

    s/David M. Lawson  
    DAVID M. LAWSON  
    United States District Judge

Dated: March 9, 2021